Filed 6/5/23 P. v. Chavez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C096605 |
| Plaintiff and Respondent, | (Super. Ct. No. P19CRF0403) |
| v. | |
| JUAN MANUEL CHAVEZ, | |
| Defendant and Appellant. | |

A jury found defendant Juan Manuel Chavez guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)—count 1)[1] and battery causing serious bodily injury. (§ 243, subd. (d)—count 2.) With respect to count 1, the jury also found true an enhancement allegation that defendant inflicted great bodily injury on the victim, Jordan R. (§ 12022.7, subd. (a).) The trial court sentenced

---

[1] Undesignated statutory references are to the Penal Code.

1

defendant to serve six years in state prison (the middle term of three years on count 1, plus a consecutive three-year term for the great bodily injury enhancement). The trial court also sentenced defendant to the middle term of three years on count 2, but stayed the sentence pursuant to section 654.

On appeal, defendant contends the trial court abused its discretion by failing to consider section 1170, subdivision (b)(6)'s new lower term presumption, despite the fact defendant was 25 years old at the time of these crimes. We conclude this contention was forfeited because defendant did not raise this argument in the trial court. Anticipating this conclusion, defendant additionally asserts his trial counsel provided constitutionally deficient assistance by failing to object to the middle term sentence on the basis of the new presumption or offer additional evidence related to defendant's youth. As we shall explain, this assertion also fails. We therefore affirm the judgment.

FACTS

On July 27, 2019, Jordan and a friend went to a bar in Cameron Park to meet up with several other friends. They arrived around 9:00 p.m. According to the bar's owner, Jordan was intoxicated when he arrived and, while at the bar that night, was "flipping people's hats" and "stealing drinks from people."

At some point, Jordan saw a young woman he knew from high school, Brooke B., who came to the bar with her husband and brother. Jordan and Brooke were not on good terms due to an undisclosed "incident" that occurred between them in high school. Nevertheless, when Jordan saw Brooke at the bar, he walked up to her and asked her to dance. Brooke became angry and responded, " 'Get away from me. I don't want to talk to you.' " Brooke's husband did not see this initial interaction, but was told about it and also became upset. He told Jordan to leave the bar.

Jordan did not leave. According to Jordan's testimony, he spent most of his time at the bar that night with his friends, but had periodic interactions with Brooke and her group, which included defendant and his girlfriend. As Jordan described, "[T]hey would

2

walk over, I would walk over, be like, hey, I don't want any problems, and then it was just—things started getting to where I just wanted to be away from them." According to the bar's owner, Jordan "kept going back . . . and trying to antagonize her," and at some point, "he proceeded to push her." The owner also told Jordan to leave.

One of Jordan's neighbors, Kyla B., was also at the bar that night. Around closing time, Kyla realized that Jordan was "in a bad situation" at the bar and decided to walk with him to a nearby grocery store and get him an Uber ride home. When Kyla went out the rear exit of the bar, Jordan was already outside. He was in another heated interaction with Brooke. Defendant's girlfriend was also involved. They were yelling at Jordan and trying to slap him. Kyla told Jordan, "[L]et's go," trying to get him to walk with her, and told Brooke and defendant's girlfriend to "back off" and "leave him alone." As Kyla and Jordan walked away from the bar down a road leading to a store, defendant approached them with his girlfriend. Kyla told Jordan to run because she did not like defendant's "bad energy and negativity" and the way he was approaching. Jordan described what happened next: "I remember his girlfriend hitting me, kind of smacking me in the head, like, walking away, and Kyla's like, 'Jordan, just run away.' And then I turned around, and I was like, 'I don't want any problems,' and then I just ran, and I got hit and then I don't remember."

The record does not reveal whether defendant hit Jordan with his fist or an object, but Jordan was knocked "out cold with blood pouring out of his mouth." After Jordan was hit, the friend he came to the bar with, William M., also came out back looking for him. William described the condition of his friend: "He looked dead. He looked, like, legitimately dead. When I went up to him, there was a puddle of blood, about this big (indicating), around his whole head, and then when I picked him up, I was like, 'Jordan, Jordan,' there was no communication. Nothing. His eyes were slightly open. His tongue was split in half hanging out of his mouth, and so I, like, panicked, like, what the heck, put him on the ground again."

3

William ran back inside the bar and told either the owner or someone on the staff what happened. Kyla also returned to the bar and told William, " '[L]et's go get Jordan.' " When they got back out to him, Jordan was somewhat responsive. William got Jordan up and seated on an electrical box. Kyla then called Jordan's sister, who came and picked him up. Jordan was ultimately taken to UC Davis Medical Center for treatment.

Defendant and his girlfriend left the scene after the assault and battery. Later that night, the mother of defendant's child, who was also a friend of Jordan, heard from other people what had happened at the bar. She asked defendant about it. Defendant said it was none of her business.

About three weeks later, Kyla was shown a photo lineup and identified defendant as the person who struck Jordan behind the bar that night. She also identified him at trial.

DISCUSSION

I

*Forfeiture*

Defendant contends the trial court abused its discretion by failing to consider section 1170, subdivision (b)(6)'s new lower term presumption despite the fact defendant was 25 years old at the time of the assault and battery. The Attorney General argues this contention is forfeited because defendant did not argue applicability of this presumption in the trial court. We agree with the Attorney General.

"As a general rule, a party who does not raise an argument below forfeits the argument on appeal. [Citation.]" (*In re Abram L.* (2013) 219 Cal.App.4th 452, 462.) This rule "applies in the context of sentencing as in other areas of criminal law." (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.) Thus, "claims of error in the trial court's exercise of its sentencing discretion are . . . forfeited if not raised at the sentencing hearing. Such errors are essentially factual, and thus distinct from ' "clear and correctable" ' legal errors that appellate courts can redress on appeal 'independent of any factual issues presented

4

by the record at sentencing.' " (*People v. Trujillo* (2015) 60 Cal.4th 850, 856-857, quoting *People v. Scott* (1994) 9 Cal.4th 331, 354.)

Effective January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170 to add subdivision (b)(6), which creates a presumption in favor of the lower prison term if "[t]he person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense," and this "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(B); Stats. 2021, ch. 731, § 1.3.) Section 1016.7, subdivision (b) defines " 'youth' " to "include[] any person under 26 years of age on the date the offense was committed."

Defendant was sentenced on June 27, 2022, about six months after this lower term presumption went into effect. He was 25 years old at the time of the assault and battery. However, his trial counsel did not raise the presumption's applicability at sentencing. By failing to raise this issue below, defendant has forfeited the claim that the trial court abused its discretion by failing to consider the lower term presumption. (*People v. Scott, supra*, 9 Cal.4th at p. 351; *People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684 [failure to object to upper term sentence below forfeited appellate argument that the trial court erred in imposing the upper term pursuant to section 1170 as it existed at the time the defendant was sentenced], review granted Oct. 12, 2022, S276237.)

II

*Ineffective Assistance of Counsel*

Anticipating the foregoing conclusion, defendant further asserts that his trial counsel provided constitutionally deficient assistance by failing to object to the middle term sentence on the basis of the new presumption, or to offer evidence related to defendant's youth. We are not persuaded.

A criminal defendant has the right to the assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) This right "entitles the

5

defendant not to some bare assistance but rather to *effective* assistance. [Citations.] Specifically, it entitles him to 'the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' " (*Ibid.*) The burden of proving a claim of ineffective assistance of counsel is squarely upon the defendant. (*People v. Camden* (1976) 16 Cal.3d 808, 816.) " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]' [Citation.]" (*In re Harris* (1993) 5 Cal.4th 813, 832-833, disapproved on another point in *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 854, fn. 5; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)

"[W]hen the reasons for counsel's actions are not readily apparent in the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the appellate record discloses ' "no conceivable tactical purpose" ' for counsel's act or omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674-675, superseded by statute in *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 230, fn. 4.) " 'If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [ineffective assistance claim properly resolved on direct

appeal only where record affirmatively discloses no rational tactical purpose for counsel's actions].)

Here, although defendant was still a "youth" at the time of the assault and battery, as that term is defined in section 1016.7, subdivision (b), this alone does not trigger the lower term presumption; instead, the presumption applies only if defendant's youth "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(B).) Because no evidence was adduced at the sentencing hearing on this question, we have no basis to conclude the presumption would have applied to defendant had it been raised. Perhaps, after carefully reviewing the facts, counsel concluded that despite defendant's relative youth, he nevertheless possessed a level of maturity precluding counsel from making a good faith argument regarding applicability of the new lower term presumption. Because the record does not negate this as a possible tactical reason for declining to argue the presumption, we cannot reverse for ineffective assistance of counsel on direct appeal. Nor can we agree with defendant's assertion that counsel provided ineffective assistance by failing to present evidence establishing the missing link between defendant's youth and the commission of these offenses. This argument presumes such evidence exists. Perhaps it does. And, if so, counsel should have presented it and argued the presumption. But perhaps the evidence would have established the contrary, and harmed defendant's prospects at sentencing. If that is the case, then counsel's omission did not fall below an objective standard of reasonableness. We simply do not know which is the case. For these reasons, the matter "is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello, supra*, 15 Cal.4th at pp. 266-267; *People v. Jones, supra*, 29 Cal.4th at p. 1254.)

Defendant has not carried his appellate burden of demonstrating ineffective assistance of counsel.

DISPOSITION

The judgment is affirmed.


      KRAUSE      , J.


We concur:


      ROBIE      , Acting P. J.


      EARL      , J.